UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CRIMINAL ACTION NO. 3:16-CR-00113-TBR

UNITED STATES OF AMERICA,                                              PLAINTIFF

v.

JOHN G. TOMES, JR.,                                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on several motions filed by Defendant John G. Tomes, Jr., [R. 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137], to which the United States ("the Government") has responded, [R. 145, 147, 148, 149, 150, 151, 152, 153, 154]. Fully briefed, these matters stand ripe for adjudication. The Court will address each motion in turn.

**DISCUSSION**

**I.    Motion to Compel the Government to Produce Statements of Co-Defendant**

Tomes moves the Court to compel the Government to produce all statements made by his former co-defendant, Jamaule Hollis, to law enforcement officers. [R. 127 at 1.] Federal Rule of Criminal Procedure 16(a)(2) states:

> Information Not Subject to Disclosure. Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

FED. R. CRIM. P. 16(a)(2). As Hollis's statements could be considered an internal document or a statement made by a prospective government witness, Tomes's motion is denied. *See, e.g.,*

1

*United States v. Higdon*, 68 F. Supp. 3d 807, 817 (E.D. Tenn. 2014) (holding that, under Rule 16 and the Jencks Act, "the law does not entitle the Defendant to inspect the statements of her codefendants or other uncharged coconspirators unless and until they testify at trial"); *United States v. Perkins*, 383 F. Supp. 922, 930 (N.D. Ohio 1974) (holding that statements of a co-defendant are not discoverable under Rule 16, and statements of witnesses or prospective witnesses are not discoverable until after direct examination under 18 U.S.C. § 3500).

Tomes also claims that he should be provided these statements pursuant to *Brady v. Maryland*[1] because if Hollis failed to identify Tomes as a drug supplier, it could prove to be exculpatory. [R. 127 at 2.] In response, the Government states that they will disclose any exculpatory or impeachment material in time for Tomes to use it at trial. [R. 151 at 1.] However, the Government also explains that Hollis's statements contain no exculpatory evidence that would trigger its duty to disclose them under *Brady*. [*Id*. at 2.] As cited by the Government, the Sixth Circuit has stated that "the *Brady* rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988); *see also United States v. Shanklin*, No. 3:16-CR-85-TBR, 2016 WL 7395304, at *2 (W.D. Ky. Dec. 21, 2016) (Russell, J.) (quoting *Presser*, 844 F.2d at 1281). As the Government has determined that the statements are not exculpatory, the statements are not required to be disclosed under *Brady*.[2] Thus, Tomes's Motion to Compel, [R. 127], is DENIED.

### II. Motion to Suppress

---

[1] *See Brady v. Maryland*, 373 U.S. 83 (1963).
[2] Of course, this is with the understanding that if the Government "fails to adequately comply with a discovery order requiring it to disclose *Brady* material, it acts at its own peril." *Presser*, 844 F.2d at 1281.

Tomes moves the Court to suppress all evidence obtained directly or indirectly pursuant to a search warrant concerning three residences in Louisville, Kentucky. [R. 129 at 1.] Tomes argues that this evidence should be suppressed because the affidavits prepared by Jeffersontown Police Detective Steven Presley in support of the warrants failed to include information regarding the "lack of veracity and reliability" of the known informant, Jamaule D. Hollis. [*Id.*] Thus, Tomes reasons, "this information denied the issuing judge a substantial basis to conclude that probable cause existed." [*Id*. at 1-2.] The Government responds that Tomes's claim is incorrect because the affidavit includes information regarding Hollis's reliability. [R. 145 at 3.] The Court agrees with the Government.

### A. Legal Standard

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. In furtherance of protecting that interest, the Fourth Amendment demands that search warrants only issue upon a showing of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause justifying the issuance of such a search warrant exists where, taking the totality of the circumstances, the affidavit supporting the warrant provides the issuant Magistrate with a "substantial basis . . . to believe 'there is a fair probability that contraband or evidence of illegal activity will be found in a particular place.'" *United States v. McNally*, 327 F. App'x 554, 556 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 238). Further, in order "[t]o justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). This requires "a nexus between the place to be searched and the evidence sought." *Id.* Therefore, the underlying affidavit which supports the search warrant must actually "contain adequate supporting facts about the underlying

3

circumstances to show that probable cause exists for the issuance of the warrant." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (citing *Whiteley v. Warden*, 401 U.S. 560, 564 (1971)). Also, "[t]he supporting facts in an affidavit need not be based on direct knowledge and observations of the affiant, but may come from hearsay information supplied by an informant." *Id.* (citing *Jones v. United States*, 362 U.S. 257, 269-70 (1960)). The decision of the Magistrate who initially issued the warrant will be reversed by this Court only if her "determinations were arbitrarily exercised." *United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012).

This Circuit has further interpreted *Gates*, instructing that a court, in reviewing the sufficiency of the evidence supporting probable cause, is "limited to examining the information contained within the four corners of the affidavit" in light of the totality of the circumstances. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). In order to deter future violations of the Fourth Amendment, the typical remedy for searches made with a defective warrant is suppression. *See United States v. Woodbury*, 511 F.3d 93, 99 (1st Cir. 2007). Notably though, suppression is not always warranted and, depending upon the circumstances, evidence may be saved from suppression where an officer acts in objectively good faith in executing an otherwise defective warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984). This means that, in situations where "evidence [is] obtained in objectively reasonable reliance on a subsequently invalidated search warrant," the "marginal or nonexistent benefits [of suppression] . . . cannot justify the substantial costs of exclusion." *Id.* In such a case, although probable cause is lacking, the fruits of the search need not be suppressed.

### B. Information Regarding Hollis's Reliability

In short, Tomes's argument that Presley's affidavit contains no information regarding Hollis's reliability can be proven false simply by reading the affidavit. The affidavit describes

4

Hollis's criminal history as well as his activities as a drug dealer, giving the judge an opportunity to assess the credibility of Hollis's account. [*See* 145-1 at 4-6 (Presley Affidavit).] Furthermore, Presely's affidavit includes added indicia of reliability, such as the fact that Hollis is a named informant, Hollis makes statements against his penal interest, and the police were able to corroborate the addresses of the "stash houses" given to them by Hollis.[3] [*Id.*] In short, the Court finds that the affidavit included information regarding Hollis's reliability, and, therefore, DENIES Tomes's Motion to Suppress, [R. 129].[4]

### III. Motion for a *Franks* Hearing

As an alternative to his Motion to Suppress, Tomes moves the Court to grant an evidentiary hearing pursuant to *Franks v. Delaware*[5] due to a false statement and material omissions allegedly contained in the affidavit in support of the search warrant. [R. 128.]

To merit a *Franks* hearing, the movant must make "a substantial preliminary showing" that (1) the affiant included a statement, either deliberately false or with reckless disregard for its truth, in the warrant affidavit, (2) without which there could be no finding of probable cause. *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir.), *cert. denied*, ─── U.S. ───, 136 S. Ct. 518 (2015). Warrant affidavits "carry with them 'a presumption of validity,' " and so the challenger's attack "must be more than conclusory . . . ." *United States v. Stuart* 507 F.3d 391, 396 (6th Cir. 2007) (quoting *Franks*, 438 U.S. at 171). That is, he must point to specific false statements and then "accompany his allegations with an offer of proof," usually in the form of supporting affidavits. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Moreover,

---

[3] These details of the affidavit are discussed further in the next section regarding the argument for a *Franks* hearing.
[4] Tomes makes the argument that although Hollis was named in the affidavit, he might not have known that his identity would be revealed in the affidavit—implying that this makes him less reliable. First, Tomes provides no case law supporting this argument. Secondly, he provides no factual evidence proving that this claim is true. Therefore, the Court will disregard this argument.
[5] *See Franks v. Delaware*, 438 U.S. 154 (1978).

"[t]he movant must *also* show that the allegedly false statements were necessary for the magistrate's determination of probable cause." *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008). Thus, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* (quoting *Franks*, 438 U.S. at 171–72).

### A. False Statement

Tomes claims that Detective Steven Presley's affidavit in support of a search warrant concerning a residence and a car in Louisville amounted to a false statement due to a discrepancy between Presley's affidavit and the affidavit of Special Agent Milton Galanos. [*See* R. 128 at 3-5.] Both affidavits describe surveillance of Jamaule Hollis's residence, during which a vehicle registered to Tomes arrived. However, Galanos did not immediately identify the driver as Tomes, whereas Presley described the driver as Tomes and then reported that Tomes subsequently drove to a different location. [*Id.*] Tomes claims that Presley included these false statements in order to bolster Hollis's statement that Tomes provided him with crystal methamphetamine. [*Id.* at 4-5.]

The Government successfully negates Tomes's argument on three different grounds. First, the Government points out that Presley never attributed the identification of Tomes in his affidavit to Galanos. [R. 145 at 7-8.] Therefore, the fact that Galanos did not identify the man in Tomes's car does not necessarily make Presley's identification of Tomes false. Secondly, even if this was a false statement, the Government argues that Tomes still has not satisfied the second prong of *Franks*. [*Id.*] In other words, if the Court struck Presley's identification of Tomes from the affidavit, there would still be probable cause on other grounds, such as: (1) Hollis was named

6

in the affidavit and saw the evidence in the immediate past,[6] (2) the police corroborated two addresses used as "stash houses" given by Hollis through surveillance,[7] and (3) the affidavit contained evidence showing that Tomes was a drug dealer and there was drug activity near his home.[8] Lastly, even if the affidavit lacked probable cause, suppression of the evidence would still not be warranted due to the good faith exception, as established by the Supreme Court in *United States v. Leon*.[9] In *Leon*, the Supreme Court provided four circumstances in which the good faith exception would not apply, however, Tomes provides no proof that this case falls within one of those circumstances.[10]

### B. Material Omissions

Tomes also claims that Presley made several material omissions in his affidavit concerning Hollis's reliability as an informant. [R. 128 at 5-8]. Specifically, Tomes argues that Presley omitted that the Louisville Metro Police Department (LMPD) lost contact with Hollis and that, according to Galanos's affidavit, Hollis continues to engage in illicit drug activity. [*Id.* at 6.] It should be noted that the Sixth Circuit "has repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an

---

[6] *See Government v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986) ("When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence.").

[7] *See Government v. Johnson*, 514 F. App'x 533, 540 (6th Cir. 2013) (holding that the affidavit supporting a search warrant contained sufficient police corroboration of an address and cell phone number given by two confidential informants when cell phone records showed the phone was near the location of the crime when it occurred and the confidential informants called the number before and after the crime occurred).

[8] *See Government v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009) ("Although a defendant's status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in defendant's home, there is support for the proposition that status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home.") (internal citation omitted).

[9] *See Government v. Leon*, 468 U.S. 897, 923 (1984).

[10] It is possible that Tomes could argue that the first circumstance, describing a situation in which the magistrate judge that issued the warrant was "misled by information in an affidavit that the affiant knew was false," applies here. However, as the Court previously explained, there is no proof that Presley's affidavit was false or that he knew it was false.

allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008).

Once again, the Government successfully attacks Tomes's argument that Presley omitted information regarding Hollis's reliability on three grounds. First, the Government emphasizes that Hollis is a named informant and subject to prosecution for providing false information. [R. 145 at 3.] The Sixth Circuit has stated not only that "naming an informant is often, but not always, an indicator of reliability,"[11] but also that a named informant can be more reliable if he is subject to prosecution for fabricated information.[12] Secondly, there were several statements from Hollis in Presley's affidavit that were against Hollis's penal interest. The Supreme Court has held that such admissions "carry their own indicia of credibility." *United States v. Harris*, 403 U.S. 573, 583 (1971). Lastly, the Government proves that Presley did outline Hollis's current criminal activity as a drug dealer, as well as his criminal history, by quoting directly from Presley's affidavit. [R. 145-1 at 5-6.] Clearly, there was ample information available for the issuing judge to be advised on the possible effect of Hollis's criminal activities on his reliability as an informant.

In sum, Tomes has failed to make a "substantial preliminary showing" that (1) the affiant included a statement, either deliberately false or with reckless disregard for its truth, in the warrant affidavit, (2) without which there could be no finding of probable cause. *Pirosko*, 787 F.3d at 369. Therefore, Tomes's Motion for a *Franks* Hearing, [R. 128], is DENIED.

### IV. Motion to Suppress Statements

---

[11] *Government v. Ferguson*, 252 F. App'x 714, 720–21 (6th Cir. 2007).
[12] *Government v. Miller*, 314 F. 3d 265, 270 (6th Cir. 2002) (reasoning that a named informant should be treated as more reliable than an anonymous tipster, especially if he or she was "subject to prosecution if this information was fabricated").

Tomes also moves to suppress all statements, observations, and evidence obtained incident to his arrest on September 20, 2016 in Beverly Hills, California and the following entrance of agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") into the residence at 311 North Delaney Drive in Beverly Hills. [R. 130 at 1.] The Government argues that Tomes's motions to suppress statements made by Tomes to ATF agents at the time of his arrest and the observations made by the agents at the residence are moot because the Government does not intend to introduce either of these as evidence in its case in chief. [R. 153 at 1-2.] The Court agrees with the Government and, thus, DENIES these portions of the motion as moot. This leaves the remaining issue of the evidence on Tomes's person seized by the agents after his arrest, i.e., four cell phones and $5,030.00 in U.S. currency. [R. 130 at 1; R. 153 at 3.]

The Search Incident to Lawful Arrest Exception to the search warrant requirement authorizes the warrantless search of "the arrestee's person and the area 'within his immediate control.'" *United States v. McCraney*, 674 F.3d 614, 618–19 (6th Cir. 2012) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). Furthermore, this doctrine "authorizes seizure of any subject items." *United States v. Harvey*, No. 5:17-CR-86-DCR-REW, 2017 WL 4018478, at *7 (E.D. Ky. Sept. 11, 2017), *report and recommendation adopted in part sub nom. United States v. Washington*, No. CR 5:17-86-DCR, 2017 WL 4017759 (E.D. Ky. Sept. 12, 2017).

Here, neither party questions the validity of the arrest warrant the agents executed before searching Tomes. Thus, incident to a valid arrest, the agents subsequent search of Tomes's person and seizure of the cell phones and currency is lawful. Tomes's Motion to Suppress the evidence obtained during this search incident to arrest is DENIED.

V. **Motion to Sever Count Fourteen**

Tomes moves to sever Count Fourteen from the Superseding Indictment, which identifies him as being a convicted felon. [R. 131 at 1.] He provides little argument and no case law in support of this motion. Mainly, Tomes states that evidence of these convictions will "unconstitutionally prejudice him in the eyes of the jury." [*Id.*] The Government counters that the Court can cure any potential prejudice through stipulations and limiting instructions. [R. 152 at 1.]

Rule 14 of the Federal Rules of Criminal Procedure provides that if the joinder of offenses in an indictment "appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any other relief that justice requires." FED. R. CRIM. P. 14(a) (emphasis added). "In order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005). In determining whether to grant a Rule 14 motion for severance, a court must balance "the interest of the public in avoiding a multiplicity of litigation and the interest of the defendant in obtaining a fair trial." *United States v. Wirsing*, 719 F.2d 859, 864–65 (6th Cir. 1983) (citation omitted).

The Court believes it would be appropriate in this circumstance to proscribe alternative relief by bifurcating Count Fourteen from the other counts in the Superseding Indictment. Trying the felon in possession count after the other counts in the Superseding Indictment would be only a minor burden on the public. It would not take much time to present the evidence of the felon in possession count to the same jury after they reach a verdict on the other counts. On the other hand, there is a real possible prejudice in the jury knowing that Tomes is a convicted felon. In sum, the indictment will be bifurcated in that evidence concerning Count Fourteen will be

presented to the jury after they reach a verdict on the other counts. Therefore, Tomes's Motion to Sever Count Fourteen, [R. 131], is DENIED AS MOOT.

## VI. Motion for Bill of Particulars

Tomes filed a Motion for a Bill of Particulars in which he moved the court to order the Government to provide him with the answers to many questions, including when Tomes joined the conspiracy, who else was a part of the conspiracy besides the named co-defendants and how did the conspiracy operate between September 1, 2015 and September 20, 2016. [R. 132 1-3.] The Government responds that the Superseding Indictment provides enough detail to apprise the defendant of the charges against him. [R. 149 at 1.] The Court agrees.

Federal Rule of Criminal Procedure 7(f) provides:

> The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

FED. R. CRIM. P. 7(f). The Sixth Circuit has explained that a bill of particulars is meant to be used as a tool to minimize surprise and assist a defendant in obtaining the information needed to prepare his defense and to preclude a second prosecution for the same crime. *United States v. Salisbury,* 983 F.2d 1369, 1375 (6th Cir.1993) (citing *United States v. Birmley,* 529 F.2d 103, 108 (6th Cir. 1976); *United States v. Haskins,* 345 F.2d 111, 114 (6th Cir. 1965)). However, it does not serve as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial. *Id.* (citations omitted). Furthermore, a defendant is not entitled to discover all the overt acts that might be proven at trial. *Id.* (citing *United States v. Kilrain,* 556 F.2d 979, 985 (5th Cir.1978)). The relevant inquiry is whether the defendant has enough information about the offense charged to enable him to prepare for trial adequately. *United States v. Graham,* 487 F. Supp. 1317, 1320 (W.D. Ky.1980) (citing 1 Wright, Federal Practice and

Procedure: Criminal § 129). A court does not abuse its discretion by denying a bill of particulars where a detailed indictment exists. *See Salisbury,* 983 F.2d at 1375; *United States v. Mahar,* 801 F.2d 1477, 1503 (6th Cir.1986).

Having reviewed the Superseding Indictment, the Court finds that it recites with sufficient particularity the charges levied against Tomes. Furthermore, many of the particulars requested by Tomes appear to be an attempt to "obtain detailed disclosure of all evidence held by the government before trial." *Salisbury*, 983 F.2d at 1375. For instance, Tomes requests the identities of all the members of the alleged conspiracy, as well as specific dates and locations regarding the conspiracy.[13] [R. 132 at 1-3.] The Sixth Circuit has stated that "the Government is not required to furnish the name of all other co-conspirators in a bill of particulars." *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (citing *United States v. Rey,* 923 F.2d 1217, 1222 (6th Cir. 1991). Furthermore, the Government specified in the Superseding Indictment that Count One occurred between September 1, 2015 and September 20, 2016 in Jefferson County, Kentucky. [R. 42 at 1.] The Government also specified actual dates for Counts Sixteen through Twenty-One and the location as Jefferson County, Kentucky. [*Id*. at 8-9.] Although Counts Sixteen through Twenty-One adds "and elsewhere" to the location, the Superseding Indictment is still adequate to obviate the need for a bill of particulars. *See*, *e.g.*, *United States v. Vassar*, 346 F. App'x 17, 21–22 (6th Cir. 2009) (holding that the government was not required to provide the identities of all other conspirators in a bill of particulars and that "an indictment that is open-ended as to beginning dates but not end dates suffices"); *United States v. Robinson*, 390 F.3d 853, 867 (6th Cir.2004) (holding that the denial of a bill of particulars is appropriate where superseding indictments charged defendant with conspiracy and alleged that conspiracy began

---

[13] The Court acknowledges that the particulars mentioned herein are purely a sample of the many particulars requested by Tomes. The Court has considered all of the requests contained within the motion and still finds that the Superseding Indictment clearly gives Tomes enough information with which to prepare his defense.

"on or about April 1999" and ended in August of 2000); *United States v. Martin*, 822 F.2d 1089 (6th Cir. 1987) (unpublished table decision) ("His request for every detail about the conspiracy, in fact, can only be characterized as a request for general discovery."); *United States v. McClure*, 734 F.2d 484, 493 (10th Cir.1984) (although the indictment did not include the exact place, time of day, or quantity of cocaine involved, a bill of particulars was unwarranted). Overall, the Superseding Indictment was not so vague as to prevent Tomes from preparing his defense. Thus, Tomes's Motion for a Bill of Particulars, [R. 132], is DENIED.

### VII. Motion for a *James* Hearing

Tomes moves for the Court to hold a pretrial hearing "to determine the admissibility of any alleged co-conspirator statements which the government intends to introduce." [R. 133-1 at 1.] This is known as a *James* hearing or, in the Sixth Circuit, an *Enright* hearing.[14] The Sixth Circuit has allowed for the trial court to follow its discretion in such matters by choosing between three methods:

> One method open to the district court is to, "admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." Other "acceptable method[s]" include holding a "mini-hearing" at which "the court, without a jury, hears the government's proof of conspiracy and makes the preliminary Enright finding" or requiring the government "to meet its initial burden by producing the non-hearsay evidence of conspiracy first prior to making the Enright finding concerning the hearsay's admissibility."

*United States v. Montgomery*, 358 F. App'x 622, 626 (6th Cir. 2009) (quoting *United States v. Vinson,* 606 F.2d 149, 152–53 (6th Cir.1979) (internal citations omitted).

In support of this argument, Tomes cites the Tenth Circuit's preference for conducting a pretrial hearing to determine admissibility of co-conspirator statements. [R. 133-1 at 1.] However, there is extensive case law supporting the view that trial court judges in the Sixth

---

[14] *See United States v. Coffman*, No. 09-CR-181-KKC, 2010 WL 3924671 at *1 (E. D. Ky. Sept. 29, 2010) ("This matter is before the Court on Defendant Megan Coffman's Motion for a *James* Hearing (DE 108), a pretrial hearing known in this Circuit as an *Enright* hearing pursuant to *United States v.. Enright*, 579 F.2d 980 (6th Cir.1978).").

13

Circuit more often decide to "admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." *Coffman*, No. 09-CR-181-KKC, 2010 WL 3924671 at *3 (collecting cases). Therefore, the Court will follow the example set by courts within the Sixth Circuit and DENY Tomes's Motion for a *James* Hearing, [R. 133].

The Court further notes that the Government has agreed to disclose any exculpatory or impeachment material that comes to its attention in time for Tomes's use at trial. [R. 151 at 1.] Also, the Government stated that if a co-defendant or co-conspirator testifies in the Government's case in chief, the Government will disclose such witness's statement pursuant to the Jencks Act, 18 U.S.C. 3500. [R. 150 at 3 (Government Response to Motion for *James* Hearing).] The Court notes that each co-defendant has pled guilty to the conspiracy charge in Count 1. The admissions carry some weight in determining whether a conspiracy existed and whether a pretrial hearing is required. The other defendants have admitted that they were co-conspirators with each other and with Tomes. The Court strongly encourages the Government to disclose all *Brady* and Jencks Act material in advance of trial.

**VIII. Motion to Preserve and Timely Produce Agents' Rough Notes**

Tomes moves the Court to order the Government to preserve and produce "any rough notes taken by any of its agents, attorneys, or any other officer, state or federal, of any interviews with persons who are or may be witnesses at trial or part of the investigation of this case." [R. 134-1 at 1.] Defendant also seeks the opportunity to inspect or copy dispatch tapes from the Jefferson County Police Department. [*Id*.] Besides an introductory citation of *Brady*, Tomes provides no binding case law or procedural rule to support this motion, nor does he provide any general explanation as to why he needs every note authored by any agent, attorney,

or officer of the state or federal government concerning any interview with any person who is or may be a witness at trial or part of the investigation. [*See id*.]

The doctrines articulated in *Brady* and in the Jencks Act grant a criminal defendant access to certain evidence. *Brady* requires the prosecution to disclose all exculpatory material and impeachment evidence to a defendant. 373 U.S. at 87; *Jells v. Mitchell*, 538 F.3d 478, 501–02 (6th Cir. 2008). The Jencks Act requires that following the testimony of a government witness, the defendant can request and the Court can order the government to provide certain documents that relate to the subject matter of the government witness' testimony. 18 U.S.C. § 3055(a), (b).

Interpreting the *Brady* doctrine, the Sixth Circuit has explained that "the Due Process Clause does not impose 'an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" *United States v. Jobson*, 102 F.3d 214, 219 (6th Cir.1996) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). Rather, the Government is bound to preserve only that evidence "that possesses an exculpatory value which was apparent before the evidence was destroyed." *Id*. Although the Government must preserve any rough notes that are known to exculpate a defendant, it need not preserve all of the rough notes of its agents.

The Sixth Circuit has likewise held that the routine destruction of interview notes does not violate the *Brady* doctrine or the Jencks Act. *United States v. McCallie*, 554 F.2d 770, 773 (6th Cir.1977) (citing *United States v. Hurst*, 510 F.2d 1035, 1036 (6th Cir.1975); *United States v. Lane*, 479 F.2d 1134, 1135–36 (6th Cir.) *cert. denied*, 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1973); *United States v. Fruchtman*, 421 F.2d 1019, 1021–22 (6th Cir.), *cert. denied*, 400 U.S. 849, 91 S.Ct. 39, 27 L.Ed.2d 86 (1970)).

15

However, the fact that the routine destruction of interview notes does not rise to a *Brady* or Jencks violation does not preclude the Court from issuing an order prohibiting such destruction from this point forward. The Government does not argue that preserving the rough notes produced by its agents would be administratively burdensome or prejudicial in any way. Therefore, Tomes's Motion to Preserve and Timely Produce, [R. 134], is GRANTED IN PART AND DENIED IN PART. The Government must preserve any exculpatory notes from this point forward, but it is not required to preserve and produce all rough notes in general.

### IX. Motion to Preserve Evidence for Defense Testing

Tomes moves the Court to order the Government "to preserve any and all evidence collected or seized as a result of the investigation of this case so that the evidence can be examined and tested independently by the defense." [R. 135.] He further seeks a statement from the Government acknowledging and explaining any evidence that has already been destroyed or exhausted during testing procedures. [*Id.*] Tomes does not explain which evidence in this case might be subject to testing, nor does he cite to case law supporting his argument that such preservation and disclosure is necessary.

While the Government is required to preserve evidence that is material and favorable to the accused under *Brady*, the Supreme Court has rejected the notion that the Government must preserve all evidentiary material. See *Youngblood*, 488 U.S. at 57–59 ("[U]nless a criminal defendant can show bad faith . . . failure to preserve potentially useful evidence does not constitute a denial of due process of law."); *accord United States v. Wright*, 260 F.3d 568, 571 (6th Cir.2001) ("For the failure to preserve potentially useful evidence to constitute a denial of due process, a criminal defendant must show bad faith on the part of the government ."). Interpreting the *Brady* doctrine, the Sixth Circuit has explained that "the Due Process Clause

16

does not impose 'an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" *Jobson*, 102 F.3d at 219 (quoting *Youngblood*, 488 U.S. at 58). Rather, the Government's duty to preserve extends only to that evidence "that possesses an exculpatory value which was apparent before the evidence was destroyed." *Id*.

Here, Tomes has pointed to no bad faith on the Government's part. Moreover, the Government is aware of its *Brady* obligations to retain material exculpatory evidence. Accordingly, because Tomes's Motion to Preserve Evidence, [R.135], exceeds the scope of what is required, it is DENIED.

### X. Motion for Leave to File Additional Motions

Tomes requests ten days from the time the Government complies with his requests for discovery by which to file additional motions, should they become necessary. [R.136.] The Government has no objection so long as Tomes can show good cause pursuant to Rule 12. Thus, the Court GRANTS Tomes's Motion for Leave to Refile Additional Motions.

### XI. Motion for Disclosure of Informants

Tomes asks the Court to enter an order requiring the Government to identify any informant who witnessed or participated in the alleged criminal activity as charged in the indictment. [R. 137-1.] Citing *Rovario v. United States,* Alfaro notes that a trial court may require disclosure of an informant's identity "where the disclosure . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." 353 U.S. 53, 60–61 (1957). The Government states that it is unaware of the participation of an unknown informant and notes that if such an informant exists, he or she will be called to testify at trial and will be

17

identified as an informant at that time. [R. 148 at 3.] In light of the Government's response, the Motion for Disclosure of Informants, [R. 137], is DENIED AS MOOT.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) Defendant Tomes's Motion to Compel the Government to Produce Statements of Co-Defendant, [R. 127], is **DENIED**.

(2) Defendant Tomes's Motion for a *Franks* Hearing, [R. 128], is **DENIED**.

(3) Defendant Tomes's Motion to Suppress, [R. 129], is **DENIED**.

(4) Defendant Tomes's Motion to Suppress Statements, [R. 130], is **DENIED AS MOOT**.

(5) Defendant Tomes's Motion to Sever Count Fourteen, [R. 131], is **DENIED AS MOOT**.

(6) Defendant Tomes's Motion for Bill of Particulars, [R. 132], is **DENIED**.

(7) Defendant Tomes's Motion for a *James* Hearing, [R. 133], is **DENIED**.

(8) Defendant Tomes's Motion to Preserve and Timely Produce Agents' Rough Notes, [R. 134], is **DENIED IN PART AND GRANTED IN PART**.

(9) Defendant Tomes's Motion to Preserve Evidence for Defense Testing, [R. 135], is **DENIED**.

(10) Defendant Tomes's Motion for Leave to File Additional Motions, [R. 136], is **GRANTED**.

(11) Defendant Tomes's Motion for Disclosure of Informants, [R. 137], is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

cc: Counsel of Record